UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JOHN EASOM,                                )    Civil Action No:
                                                  )
                       Plaintiff,   )
                                                    )
     -against-                           )
                                                      )
SHARPS TECHNOLOGY INC. and      )
ALAN R. BLACKMAN,                      )
                                                      )
                      Defendants.      )
-----------------------------------------------------------------x

## COMPLAINT

Plaintiff, John Easom, by and through his counsel of record, alleges the following against Sharps Technology Inc. ("Sharps") and Alan R. Blackman ("Blackman") (together "Defendants"), for fraud, negligent misrepresentation and violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934:

## NATURE OF THE ACTION

1.  Development stage companies often use stock options to attract and retain employees. In February 2019, Plaintiff began work as a consultant for Sharps, a then privately held medical device company, earning $15,000.00 per month. In April 2019, Defendants Sharps and Blackman induced Plaintiff to accept a position as an employee with Sharps, and to reduce his compensation by $5,000 per month, in exchange for 250,000 options which Blackman represented to Plaintiff would compensate him for the salary differential. Sharps and Blackman further induced Plaintiff in mid-2021 to defer half of his salary and remain an employee of Sharps, rather than pursue other job opportunities, by offering additional stock options and falsely representing the value thereof.

2. Sharps terminated Plaintiff's employment effective December 31, 2021. In or around this same time in December 2021, Blackman induced Plaintiff to continue working for Sharps without compensation by representing to Plaintiff that this would enable him to exercise his stock options in an upcoming Initial Public Offering ("IPO"). Blackman further represented to Plaintiff at this time that the stock was valued at $5 per share.

3. At all relevant times, Sharps and Blackman made materially false statements and omissions to Plaintiff concerning his ability to meaningfully exercise his options, the value of his options and Sharp stock, and the status of his employment. Plaintiff relied to his detriment on Defendants' material misrepresentations and omissions and as a result, agreed to forgo other job opportunities, reduced his salary by $5,000 per month in April 2019, deferred half his salary in mid-2021, and ultimately, worked without compensation at Sharps, all in exchange for the stock options which are essentially worthless.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. §1332(a), which provides jurisdiction over actions between citizens of different states where the amount in controversy exceeds $75,000. To the extent that Plaintiff's claims arise under the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b), this Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 27 of the Securities Exchange Act of 1934.

5. Venue is proper in this District because Defendants maintain their corporate headquarters and conduct business in this District.

## THE PARTIES

6. Plaintiff John Easom is domiciled in, and a citizen of, New Jersey.

7. Defendant Sharps Technology Inc. ("Sharps") is a limited liability company organized under the laws of the State of Nevada, with its principal place of business at 105 Maxess Road, Suite 124, Melville, New York 11747. Sharps designs, manufactures, and markets "smart safety syringes" which are designed to eliminate accidental needlestick injuries and reduce medication waste.

8. Defendant Alan R. Blackman ("Blackman") is a Co-Founder of Sharps and serves as Sharp's Co-Chairman of the Board of Directors, Chief Investment Officer, and Chief Operating Officer. Blackman maintains a mailing address at 11502 Robles Drive, Repp Place, Temple Terrace, Florida 33617, and is a resident and citizen of Florida.

## STATEMENT OF FACTS

9. On February 1, 2019, Plaintiff John Easom joined Sharps as a 1099 consultant for business development with monthly compensation of $15,000.00.

10. On April 1, 2019, Sharps asked Mr. Easom to go on the payroll as a W-2 full time, dedicated, employee with a salary of $10,000.00 per month. Sharps told Mr. Easom that they needed to show the company had people on the payroll, and that Sharps also wanted full-time dedication. Blackman orally represented to Mr. Easom that Sharps would make up the monthly pay differential of $5,000.00 per month by providing Mr. Easom with 250,000 options with an exercise price of $1.25 per share, with 15% vested and the balance vesting over the next three years. Blackman said there was a clear intent for the company to go public quickly and that the options would all be vested and able to be exercised in a "cashless" transaction. Blackman told Mr. Easom that a cashless transaction meant that Mr. Easom would not have to put any of his own money up to exercise his options. Blackman also said that in the event the company would

3

be sold, Mr. Easom's options would vest immediately, and the value of the stock would not be less than $5 per share. Blackman told Mr. Easom that the value of the company, including the patents, were worth more than $100 million and that there were 20 million shares outstanding. Blackman knew, or reasonably should have known, that his statements to Mr. Easom were materially false and misleading and that Blackman lacked a reasonable basis upon which to make these statements.

11. Mr. Easom relied on Mr. Blackman's representations that the 250,000 options with an exercise price of $1.25 per share with 15% vested and the balance vesting over the next three years would more than compensate Mr. Easom for the salary loss of $5,000 per month, and his full time dedication to Sharps. Blackman had no reasonable basis at this time for making these statements, but simply made these statements to induce Mr. Easom to work for less salary. Based on Blackman's statements, Mr. Easom agreed to accept the employment package of $10,000 per month with the options contract. At this point, Mr. Easom was being pursued by another company for a lucrative project, which he turned down based on his reliance on Mr. Blackman's statements that the options would more than compensate Mr. Easom for the salary differential. Blackman's statements about the value of the options thus enticed Mr. Easom to pass on other job opportunities and accept full time employment at a reduced monthly compensation from Sharps. Mr. Easom was thus made a full time Sharps employee and was paid through a payroll company called Paychecks.

12. On January 2021, Sharps increased Mr. Easom's salary to $12,000.00 per month. In May, June and July 2021, however, Sharps and Blackman asked Mr. Easom to defer his compensation in exchange for additional stock options. Mr. Easom agreed to defer half of his

salary, and could not agree to defer more, since he already took a 30% reduction in monthly compensation.

13. On September 30, 2021, Mr. Easom received a second Stock Option agreement for 9,000 options with an exercise price of $2.00 per share, fully vested.

14. In both options contracts, Mr. Easom was required to remain an employee of Sharps in order to exercise the options, and if Mr. Easom no longer was an employee of Sharps, he would have 90 days to exercise the options.

15. In or around the same time that Mr. Easom received the second Stock Option agreement, Sharps management, including Blackman, commonly referred verbally to the then not publicly traded Sharps stock in the presence of employees, including Mr. Easom, as being worth approximately $4 per share based on an expected valuation of between $80 million and $100 million dollars. These statements, which lacked a reasonable basis in fact, were made, in large part, to induce employees like Mr. Easom to remain with Sharps in the hopes of cashing in on their options once the company went public.

16. At this same time, in or around September and October 2021, Mr. Easom turned down job offers from other companies and instead, continued to work as a full time employee for Sharps in reliance on the representations made by Sharps and Blackman as to the Sharp stock valuation, and the timeline for exercising his options. Indeed, in or around this same time frame, Blackman represented to Mr. Easom that there was going to be an event in the near future which would shorten the timeline for Mr. Easom to exercise his options. Mr. Easom felt he had no choice but to continue working as a full time employee at Sharps in order to receive the compensation owed to him.

17. Unbeknownst to Mr. Easom, Sharps management, including Blackman, were planning to terminate Mr. Easom and did not intend to allow him an opportunity to exercise his stock options.

18. Indeed, approximately two months later in December 2021, Robert Hale, the CEO of Sharps, informed Mr. Easom that his services were no longer needed as of December 31, 2021, and that Blackman would be in touch with Mr. Easom to work something out regarding the timeline for him to exercise his options.

19. At this time, in late December 2021, Mr. Easom wrote to Blackman concerning the time frame for the expiration of his right to exercise his options. Blackman told Mr. Easom not to worry about the timeline or his options expiring because Sharps was doing an IPO and his options would be worth much more than the exercise price.[1] Mr. Blackman told Mr. Easom his net gain would be 3 times his options price. Mr. Blackman told Mr. Easom the Sharps stock was valued at $5 per share.

20. Mr. Blackman and Mr. Easom discussed Mr. Easom staying on with the company as a non-paid consultant/advisor in order for Mr. Easom to have the opportunity to exercise his options following the IPO, to which Mr. Easom agreed. Mr. Easom thus continued to work for Sharps without compensation in reliance on the representations of Mr. Blackman concerning the valuation of his options and the imminent IPO.

21. Throughout the Winter 2022, Mr. Easom worked for Sharps without compensation and supported Sharps' transitioning of new point people with the government and

---

[1] At or around this time, Mr. Blackman extended the options exercise periods for three members of the Sharps Board of Directors who had also left the company.

the storage facility.

22. Mr. Blackman and Mr. Easom remained in contact for the next several months, but at no time did Mr. Blackman inform Mr. Easom that Sharps had decided unilaterally that the 90-day time frame for the exercise of his options would commence on February 28, 2022.

23. Nor did Sharps or Blackman inform Mr. Easom that on March 22, 2022, Sharps had reincorporated from Wyoming to Nevada, a plan that was in the works for several months, thus resulting in a reverse stock split which materially reduced the number of Mr. Easom's options and increased dramatically the exercise price: the 250,000 options granted in April 2019 with an exercise price of $1.25, of which 51,191 had vested, were now 71,429 options with an exercise price of $4.38; and the 9,000 options fully vested and granted in September 2021 with an exercise price of $2.00 were now 2,572 options with an exercise price of $7.00.

24. Since the Sharps' IPO on April 19, 2022, Sharps' stock has traded between a high of $3.62 per share and a low of $0.82 per share, well below Mr. Easom's exercise prices for his options and below the stock valuation repeatedly touted by Sharps and Blackman to Mr. Easom of $4 to $5 per share.

25. Mr. Easom first learned of this material information concerning the February 28, 2022 "end date" for his employment and the commencement of 90-day time frame for exercising his options, and Sharps' reincorporation and reverse stock split on April 21, 2022, two days after Sharps closed its $16 million IPO on April 19, 2022, via an email from Andrew Crescenzo, the Chief Financial Officer of Sharps.

26. Had Blackman, or anyone at Sharps, informed Mr. Easom of this material information which greatly impacted the value of his options agreements when he agreed to defer

half of his salary in exchange for additional options granted in September 2021, Mr. Easom would not have agreed to remain an employee of Sharps, defer his salary, and/or work as a non-paid consultant for Sharps during the Winter 2022.

27. Moreover, had Sharps and Blackman informed Mr. Easom of this material information concerning the value and timeline for exercise of his options, Mr. Easom would have negotiated a formal extension of his options contracts for a meaningful time period, as did three members of the Sharps Board of Directors.

28. When Defendants induced Ms. Easom to defer half of his salary (and remain an employee of Sharps rather than pursue other employment opportunities) in exchange for additional options provided to Mr. Easom on September 30, 2021, Sharps and Mr. Blackman knew, or reasonably should have known, that (a) Mr. Easom would soon be terminated, thus denying him a meaningful opportunity to exercise his options; and (b) the company was reincorporating in Nevada, which would result in a reverse stock split and a material decrease in the number of Mr. Easom's options, as well as a material increase in the exercise price of his options making them illiquid. Indeed, even when Sharps officially ended Mr. Easom's employment on February 28, 2022, and began the 90 day options exercise period, Sharps and Blackman failed to inform him.

29. At all times relevant, Sharps and Blackman failed to disclose known, material information to Mr. Easom concerning the duration of his employment, the value of his options, the options exercise price and the exercise period. Mr. Easom detrimentally relied on Sharps' and Blackman's materially false representations and omissions to his detriment.

## COUNT I
## Fraud

30. Plaintiff repeats and realleges each and every allegation above with the same force and effect as if fully set forth herein.

31. Defendants induced Plaintiff to accept a reduced monthly salary in April 2019, defer half his salary in mid- 2021, remain employed full time with Sharps, rather than accept or pursue other job offers, and to work without compensation for Sharps during the Winter 2022, by providing him with stock options, representing that he would have a meaningful opportunity to exercise his options cashlessly and that the stock would be worth between $4 and $5 per share. At all times relevant, Sharps and Blackman had no reasonable basis on which to represent this stock valuation – indeed, Sharps stock has never traded as high as $4, let alone $5, per share. Blackman, moreover, convinced Mr. Easom to continue providing consulting services to Sharps without compensation during the Winter 2022, by representing that this would enable Mr. Easom to exercise his options and further represented at this time that the stock was valued at $5 per share.

32. Defendants' statements were materially false and misleading because at all relevant times, and at a minimum, throughout the second half of 2021, Defendants knew and failed to disclose material information to Mr. Easom, including: (a) Defendants lacked a reasonable basis on which to represent that Sharps' stock was worth between $4 to $5 per share; (b) that Defendants intended to terminate Mr. Easom by the end of 2021, thus denying him a meaningful opportunity to exercise his options; and (c) that Sharps was reincorporating in Nevada, which would result in a reverse stock split making Mr. Easom's options materially less

9

valuable and illiquid. Indeed, when Sharps "officially" ended Mr. Easom's employment on February 28, 2022, and began the 90-day options exercise period, Sharps failed to inform Mr. Easom of this material information.

33. Defendants made these false and misleading representations and omissions knowingly, recklessly, and/or without regard for their truth or falsity, and with the intent to induce Plaintiff to rely upon them.

34. Plaintiff justifiably relied upon the false representations and omissions made by Defendants to his detriment because he continued to work at Sharps, agreed to reduce his salary, deferred his salary, and ultimately, forewent his salary, and passed on other job opportunities.

35. As a direct and proximate result of his reliance upon the false representations and omissions of Defendants, Plaintiff has suffered damages, including, but not limited to, loss of wages, lost employment opportunities at other companies, and loss of a meaningful opportunity to exercise his options.

36. Because of the willful and wanton conduct of Defendants, Plaintiff is entitled to punitive, as well as actual, damages.

## COUNT II
### Negligent Misrepresentation

37. Plaintiff repeats and realleges each and every allegation above with the same force and effect as if fully set forth herein.

38. Based on their unique or special expertise with respect to their knowledge of the business plans and operations of Sharps, Defendants had a special relationship of trust or confidence with Plaintiff, which created a duty on the part of the Defendants to impart correct

information to Plaintiff.

39. Defendants induced Plaintiffs to reduce his salary, defer half his salary, remain employed at Sharps and turn down other job opportunities, and ultimately, to work without pay for Sharps, by falsely representing to Plaintiff that he would have a meaningful opportunity to exercise his stock options cashlessly and that Sharp's stock would be worth between $4 and $5 per share. These statements were materially false and misleading because at all relevant times, and at a minimum, throughout the second half of 2021, Defendants knew and failed to disclose material information to Mr. Easom, including (a) that Defendants had no reasonable basis on which to represent that Sharps' stock was valued at $4 to $5 per share; (b) that Defendants intended to terminate Mr. Easom by the end of 2021, thus denying him a meaningful opportunity to exercise his options; and (c) that Sharps was reincorporating in Nevada, which would result in a reverse stock split making Mr. Easom's options valueless and illiquid. Indeed, when Sharps "officially" ended Mr. Easom's employment on February 28, 2022, and began the 90-day options exercise period, Sharps and Blackman failed to inform Mr. Easom of this material information.

40. Defendants made these false representations knowing that Plaintiff would use and rely upon them for the particular purpose of agreeing to reduce his salary, defer half his salary, pass on other job opportunities and remain employed by Sharps, and ultimately, work without compensation for Sharps.

41. Plaintiff justifiably relied on the Defendants' false representations in furtherance of that particular purpose by continuing to work for Sharps (and passing on other job opportunities) in exchange for reduced, deferred, and ultimately, no compensation.

42. Defendants knew that Plaintiff would rely upon the false statements concerning

11

the options valuation for the particular purpose of continuing to provide work for Sharps at a reduced, deferred, and ultimately, no salary.

43. As a result of his reliance on the Defendants' false representations, Plaintiff has suffered damages, including, but not limited to, providing work for Sharps in exchange for reduced, deferred and/or no compensation, remaining employed at Sharps and declining other job opportunities, and being denied a meaningful opportunity to exercise his options.

## COUNT III
### Violation of Section 10(b) of the Exchange Act and Rule 10b-5

44. Plaintiff repeats and realleges each and every allegation above with the same force and effect as if fully set forth herein.

45. This Count is asserted against Sharps and Blackman and is based upon Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(b), and Rule 10b-5 promulgated thereunder.

46. On or around April 1, 2019, Plaintiff and Defendants negotiated an employment package for Plaintiff that included a grant of stock options. The Second Circuit has held that the receipt of employee stock options may satisfy the "purchase" or "sale" requirement for a Section 10(b) claim where an individual negotiates an employment package that includes a grant of stock options. See *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555 (2d Cir. 1985).

47. Plaintiff made an affirmative decision to accept a compensation package from Defendants that included stock options as consideration for his agreement to accept employment with Sharps on April 1, 2019. As a result, there existed bargained for consideration for the options – i.e., Plaintiff's agreement to accept employment with Sharps, and therefore a "purchase"

of a security.

48. Prior to April 1, 2019, Plaintiff had worked for Sharps as a 1099 independent consultant and was paid a monthly wage of $15,000.00. Sharps and Blackman explained to Plaintiff that Sharps needed to show employees on the payroll, and thus, requested that Plaintiff become a W2 employee, and commit full time dedication to Sharps at a reduced monthly wage of $10,000.00, plus 250,000 stock options. Blackman verbally represented to Plaintiff in or around April 1, 2019, that the stock options would more than compensate Plaintiff for the salary differential of $5,000 per month and that the stock was valued at $5 per share. Blackman had no reasonable basis upon which to make these materially misleading statements.

49. As set forth above in paragraphs 9 through 29, Defendants induced Plaintiff to accept a reduced monthly rate of pay in April 2019 and become a full time employee, defer half his salary in mid- 2021, and remain employed with Sharps, rather than accept or pursue other job offers, and to work without compensation for Sharps during the Winter 2022, by providing him with stock options and representing that he would have a meaningful opportunity to exercise his options and that the stock would be worth between $4 to $5 per share. Blackman, moreover, in or around late December 2021, or early January 2022, convinced Mr. Easom to continue providing consulting services to Sharps without compensation during the Winter 2022, by representing that this would enable Mr. Easom to exercise his options following the anticipated IPO, and that the stock would be valued at $5 per share.

50. These statements were materially false and misleading because at all relevant times, and certainly during the second half of 2021, Defendants knew and failed to disclose material information to Mr. Easom, including: (a) Blackman lacked a reasonable basis on which

to represent to Mr. Easom that the Sharps stock was valued at between $4 to $5 per share; (b) Defendants' intent to terminate Mr. Easom, thus denying him a meaningful opportunity to exercise his options; and (c) Sharps' plan to reincorporate in Nevada, which would result in a reverse stock split making Mr. Easom's options materially less valuable. Indeed, when Sharps "officially" ended Mr. Easom's employment on February 28, 2022, and began the 90-day options exercise period, no one at Sharps bothered to inform Mr. Easom of this material information.

51. Sharps and Blackman violated §10(b) of the 1934 Act and rule 10b-5 in that they: employed devises, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff with respect to his acceptance of the stock options in lieu of salary.

52. Sharps and Blackman acted with scienter in that they knew that the information provided to Plaintiff concerning his ability to meaningfully exercise his options cashlessly and the value of the options was materially false and misleading. Sharps and Blackman, by virtue of their receipt of information reflecting the true facts of the company, made them privy to confidential proprietary information concerning the company and participated in the fraudulent scheme alleged herein.

53. Blackman, a founder, senior officer, and director of Sharps, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff, or, in the alternative, acted with reckless disregard for the truth when he failed to ascertain and disclose the true facts in the statements made by him to Plaintiff.

54. Plaintiff relied on the statements described above in making employment decisions, including agreeing to a reduced salary, deferring half his salary, and ultimately, foregoing his salary, as well as not pursuing other job offers and opportunities and continuing to work for Sharps.

55. Had Plaintiff been aware of the actual value of the stock options and his inability to meaningfully exercise the options, he would not have agreed to reduce his salary, defer half his salary, and forego his salary at Sharps and he would not have continued to work for Sharps as long as he did. Moreover, he would have negotiated a formal extension of the time period in which to exercise his options, as did others at Sharps.

56. As a result of the wrongful conduct alleged herein, Plaintiff has suffered damages in an amount to be established at trial.

57. By reason of the foregoing, Sharps and Blackman have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiff for substantial damages which he has suffered in connection with his purchase of the Sharp options.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following:

a) Compensatory, consequential and general damages in an amount to be determined at trial;

b) Punitive damages on account of Defendants' willful and wanton disregard of

Plaintiff's rights;

    c)    Costs and disbursements of the action;

    d)    Pre- and post- judgment interest;

    e)    Reasonable attorneys' fees; and

    f)    Such other and further relief as this Court may deem just and proper.

Dated: March 1, 2023
New York, New York

Respectfully submitted,

*/s/ Catherine E. Anderson*
Catherine E. Anderson
GISKAN SOLOTAROFF ANDERSON
   & STEWART LLP
90 Broad Street, Second Floor
New York, NY 10004
Tel: (212) 847-8315

***Counsel for Plaintiff***